Good morning, Your Honours. May it please the Court, my name is Barbara J. Garnella-Allen and I represent the petitioner Michael Ajiboye in this case. This matter was brought before this Court for the purposes of an asylum claim for the purpose of an asylum claim for withholding as well and convention against torture. In the meantime, we were briefed in this case which was in 2015. The respondent married a US citizen and he became eligible for new relief where he will be able to readjust his status through his US citizen spouse on a matter of, I'm sorry, it's under Negrete Ramirez v. Holder, 9th Circuit 2014. For that speak to the department regarding a joint motion to reopen, which they claimed they would entertain if my client got the I-130 approved, which he did. Then oral arguments came about and I attempted to file the joint motion to reopen and was informed that the government now chose not to entertain the motion. So for that reason, we'll have to file a so-spontane motion to reopen and remand with the board. And meanwhile that is pending, I'm going to ask this Court, respectfully request that this Court hold these hearings in abeyance until the motion to reopen is decided. We can't grant that today. We'll just take it under advisement. So go ahead with your argument on the merits. Okay then Judge, we'll proceed. My client is a Nigerian who entered the United States back in 1980 as a non-immigrant. In 1985, he obtained his lawful permanent resident status. Before he entered the United States though, he's from a Muslim family. And in 1983, he became a Christian in the United States, which means that he's an apostate. His entire family became apostates when they converted from Muslims to Christianity. In 1985, my client returned to his country. And they were, his father who also became a pastor, and was a pastor in a local church in the northern part of Nigeria, they were doing crusading between the northern and the southern parts of Nigeria when at one point they were at a checkpoint and they were apprehended. My client was beaten to the ground. When he returned to the United States, sometime in 1991, my client was convicted of a crime. He was convicted of mail theft in 1991 under Section 18 U.S.C. Section 1709 and possession of stolen mail in violation of 18 U.S.C. 1708. He was sentenced to 10 months confinement, three years probation, and a fine of a hundred dollars at that time. Back in 1998, he had another conviction under, which was three counts of mail fraud in violation of 18 U.S.C. Section 1341 and possession of 15 or more unauthorized access devices in violation of 18 U.S.C. 1029 A3. He was given 41 months in prison. He served about two years, and it's calculated from the time of his sentence April 14 to 2008, I'm sorry, time of his sentence, because on April 4, 2000, the department served him with form I-862, which his NTA stated that he has been convicted of an aggravated crime. You're taking a lot of your time on this question. Okay, sir. So then, once... Hold on, hold on. Counsel, listen to the question. Okay. So... I just wondered whether, your point is you don't consider these particularly serious crimes? Yes, sir, because we're saying that he was given, he served less than five years, his sentence was 41 months, and we're saying that he, the criminal conviction was not, the judge had not really looked to the particular standard under Francesto. Okay, well then, I think we understand that argument. Why don't you move on to your next, because you're over half through. I'm sorry, I didn't hear you. I said you've got the half your time already. Okay. And you want to get to the other questions. Well, the problem occurred when we went to the merit hearing. When we went to the merit hearing, the respondent offered certain types of evidence at the hearing. One such evidence was a newspaper, a photograph of himself saying that he was being wanted by the Sharia law police. The government then, at that point, stated that the respondent had fraudulently submitted, came up with a document which he submitted. At that time, the court, the court then gave no weight to the document to the extent that the judge found, the judge gave no weight to it. Consequently, the judge gave no weight to other pieces of evidence that was submitted. We're of the opinion that the IJ and the government cherry-picked parts of the evidence that was submitted. For example, not only was the newspaper claimed to be fraudulent, which the government submitted, but we do not believe that the government gave enough explanation as to how they obtained the copy of the Nigerian newspaper that was presented to the court. Well, they got it through the Library of Congress, right? Well, they said it was, but they never... And the letter is from the Library of Congress. But judge, there were certain information on that document. For example, that document particularly stated, Indiana University, September 17, 1989. How did that come about? Was that document really obtained from the Nigerian newspaper or was it from an unreliable source? Didn't he say that he'd compared it with the newspaper that the Library of Congress had and the article your client offered was essentially fraudulent? Well, judge, even at that time, we do not believe that the government had established a chain of custody of that document. When the government offered the document, the IJ asked your client's counsel whether she had any objection to the government's proffer. And his lawyer replied, I haven't had a chance to review in detail, judge, but no objections. I would just like time to review it. The IJ then gave her two and a half months to review it and also an opportunity to address it in the final submission. And there was never anything said further about this. Well, at that time when we were in court, the respondent had requested the document from his country, the document that he submitted. The respondent had no idea why it would be different from the other evidence that the government claimed that they obtained from the Library of Congress. But as if that was not enough, judge, the court cherry-picked part of the expert witnesses testimony. Well, I mean, first of all, the argument you're making today in your briefs, they didn't have the right to confront the evidence. Where did you make that in front of the BIA? I don't see that you made that argument in front of the Board of Immigration Appeals when you appealed from the IJ to the BIA. Can you help me? I can't recall, judge. I would have to go back to my brief to see what I actually said regarding to that issue. But I remember stating in court that we had a problem with the chain of custody of the authentication. I don't see that argument in your brief to the BIA. And if it's not in the brief, then to the BIA, then it's not exhausted administratively. But another issue that we had with the court was the fact that the expert witnesses testimony regarding the expert witness who was Dr. Mitchell, they cherry-picked part of his testimony in order to be able to deny the respondent's claim. For example, when the trial attorney asked the witness, what if Sharior Court never wanted him to go after him with this law? He never finished the sentence. At that point, the witness responded, well, he wouldn't be in any danger then. Well, the government has used that statement since to say that the respondent would not in any way be in danger if he were to be returned to Nigeria. We believe that- That's because if you accept the article, he wasn't wanted. The premise, as I understand it, of the expert's testimony, your own expert's testimony was that if the article, if there was no picture of him in the record, then there was no danger to him. Well, let's then look at the fact that the judge did find my client credible. He was found credible, and if he was found credible, why weren't the other pieces of evidence in the file addressed? It seems to me that if he was found credible, everything he stated was supported by substantial evidence in the record, why wouldn't the court then evaluate the evidence that we had submitted to find- Unless it's fraudulent. Your client could testify. Wasn't your argument on appeal that he didn't know that the newspaper was fraudulent? Yes, he didn't know. So, I mean, you seem to be saying we should accept the newspaper because he testified credibly. But even if my position is- I can't recall, Judge, as I said before. I'm afraid our questions have taken, you're two minutes over your time. I'm sorry. Okay, Judge, I will leave the rest for, but essentially what I'm saying is that if the respondent is found credible, then the court should look at the other parts of the evidence. Thank you, Counsel. Thank you so much. Good morning. May it please the court, Lindsay Corliss for the respondent. We ask that the court deny petitioner's petition for review and uphold the board's decision. As a preliminary matter, it's undisputed that petitioner in this case is removable based on his aggravated felony convictions. That means that this court's jurisdiction is limited to the colorable constitutional claims and legal arguments that petitioner may make, as well as, under this court's precedent, the petitioner's cat deferral claim, because it was denied on the merits rather than based on a disqualifying conviction. That jurisdictional limitation brings me to the agency's denial of petitioner's application for withholding of removal. The agency denied withholding of removal based on petitioner's conviction for a particularly serious crime. The determination that a particular conviction constitutes a particularly serious crime is a discretionary determination that involves the weighing of the facts. So this is outside of this court's jurisdictional purview. I will just quickly address petitioner's claim that because he was found credible that the agency needed to accept his statements about the crimes that he committed. I will say two things. First is that what the agency did was that it weighed all of the evidence in the record, and petitioner's testimony was just one factor. And so addressing whether or not they should have applied more weight to that one factor rather than to the other evidence in the record is a factual question outside of the jurisdictional purview. I will also state that petitioner, when he testified about his crime, he didn't add more facts in order to explain why his crime or his conviction wasn't particularly serious. What he essentially said was, I didn't actually commit this crime. I was found guilty of having committed the crime. And that's a collateral attack. So I'll move forward, and the Supreme Court has been very clear that collateral attacks on criminal convictions are not permitted. But I'll move forward to the agency's denial of cat deferral. The agency properly denied cat deferral in this claim, in this case, because petitioner failed to meet his burden to show that he faces a probability of torture throughout Nigeria. In making that finding, the agency credited petitioner's testimony, but found that the evidence in the record didn't objectively, didn't show that he objectively faces a probability of future torture in Nigeria. Petitioner, during the course of his testimony, claimed at least nine separate times that the reason that he feared that he would be targeted for torture in Nigeria was because he had appeared in a wanted ad in a newspaper in 1985, and he believed that someone who had seen that ad in a newspaper in 1985 would turn him into the Sharia police for money. So this was what he stated again and again throughout the record. However, the board found that the wanted ad that he based his entire claim on was fraudulent. But they did that on the basis of an affidavit from a witness? They did that on the basis of the Library of Congress's analysis, and also on the copy of the original newspaper that's provided by the Library of Congress. Now, aren't you required to attempt to present the witness in person? Well, there is no, as far as admitting evidence into the court, in immigration court, there aren't rules of evidence. The question is, is it fundamentally- Don't we have cases that say that you're required to make an effort to obtain- Produce the witness? Yes. Well, in this case, Petitioner has never argued that this person ought to have been produced. He didn't ask to cross-examine the person who produced that evidence. Aside from that, aside from whether he waived his rights, isn't it a constitutional violation, a violation of due process, for you to fail to produce a witness or make a reasonable effort to obtain his presence? In a situation where there's no objection to the evidence, this is a government entity that has- You're talking about waiving the right, but isn't it a due process right to have the government, and don't you have an obligation, instead of just presenting an affidavit, to make an effort to obtain the presence of the affiant? Often, you know, we have evidence that, such as a State Department country report, that is based on government entities providing documents. Now, if Petitioner had wanted to object to the admission of evidence- Okay, you're back to his failure to object, or her failure to object, whoever his failure was. Petitioner, I would submit that Petitioner did agree preemptively to, that this information, that his article would be sent to the Library of Congress in order to determine whether or not it was fraudulent. He didn't- And did he agree by that, that there didn't have to be a witness that testified to that, so that he could be cross-examined? I'm sorry, can you ask the question one more time? I'm sorry. Yes, you said he agreed that it could be sent to the Library of Congress for examination, and I said, did he agree that then he would, that it need not be a witness who would be subject to cross-examination? He did not explicitly agree to that, no. Could I ask you, if this were a criminal case, and the evidence was offered, this defendant said, I have no objection, I just want an opportunity to review it. The judge gives him two and a half months, and then says, submit a document. And by the way, you could address this issue. Is that a violation of the due process clause? I don't view it so much as a procedural forfeiture, is that it just, I don't know what the due process violation is. I am not, I don't see the due process, I mean, in immigration court, we often have staffians submitting statements, and have them not submit to cross-examination. Expert witnesses sometimes submit statements without cross-examination. We, you know, people who are, who are writing letters in support of petitioner, in, in support of, of his asylum claims or withholding claims. They submit, they submit letters. I think we're talking about the situation in which the government claims there's a fraudulent document. And I understand that there's no objection here, and it wasn't raised on appeal, and there was plenty of time, but I mean, on the basic question, if the government's going to claim a document that's fraudulent, usually they produce the witness, true? That, that is my experience, that generally they will at least attempt to. May I ask a different question? Getting back to the initial motion that was presented today, the state proceedings, I gather the government's position is that it prefers, it opposes the motion. It, it. The state proceedings to allow the motion to be reopened and filed with the BIA for. Oh, oh, oh. I want to. Well, because it is a, a sua sponte, a request for sua, sua sponte reopening, we, we do believe that, that there's not a reason to, to hold this case currently. Right, was there an agreement with petitioner's council previously to file a joint motion? I heard, I, I'm not aware of that. DHS did not inform. Did you look in the file? What? Did you look in the file or check? Well, I asked, so I was informed of this last week and at that point I contacted USCIS to get the documents, then I contact DHS and I asked DHS whether they were planning, whether they would plan under these circumstances to join a motion to re, to reopen and I was told that they did not plan to. I also discussed with petitioner's council and at that point she told me that she had been surprised to find out that this I-130 petition had been approved, even though it had been approved in 2015, so it seemed to me, I didn't go back and check if, if there had been a change in position because I thought that this was new to petitioner's council as it was new to me, so I didn't think that the, that DHS had ever reviewed it before. Okay. Do you object? To the re, to reopening? No, I mean, I, I don't, I'm not a party to that procedure. I, I, it's not my decision. It's DHS, it's not DOJ's position. It's, it's DHS's decision. And they object. And, and they have told me that they object, but. So, but there, but you've verified that there's approved I-130? Yes. Okay. And play this out for me. Even, even in light of the finding of aggravated felony in a particularly serious crime, would he be eligible to adjust his status under I-130? Well, he is, so he is eligible to apply for a waiver of, of the grounds that would make him unable to adjust. Right. So. In other words, he would not be able to adjust, but for a waiver. Yes. Okay. Very good. Any further questions? No. Okay. Thank you, counsel. Thank you. You're over, you used up all of your time in your opening, so there'll be no rebuttal. Thank you. The next case, and I thank you both for your arguments. The case just argued will be submitted. And the next case on the oral argument.
judges: Reinhardt, Thomas, Korman